UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CHAD D. CORDREY,

    Plaintiff,

v.                                    Case No. 5:15cv33/MW/CJK

CORIZON, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This prisoner civil rights case, filed under 42 U.S.C. § 1983, is before the court upon defendant Johnson's motion to dismiss for failure to state a claim, based on plaintiff's failure to exhaust administrative remedies. (Doc. 42). Plaintiff has not responded to the motion, although invited to do so. (*See* Doc. 43). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon careful consideration, the undersigned concludes that defendant Johnson's motion should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Florida penal system currently confined at Graceville Correctional Institution. Plaintiff was confined at Apalachee Correctional Institution (ACI) at the time of the events giving rise to his complaint. Plaintiff's complaint, filed in February of 2015, names four defendants: Corizon, Dr. Johnson,

Dr. Alvarez and Dr. Render. (Doc. 1). Plaintiff claims the defendants delayed and denied proper medical treatment for his injured jaw, in violation of the Eighth Amendment of the United States Constitution. Plaintiff recently dismissed his claim against Dr. Render. (Docs. 32, 36, 46). Corizon and Dr. Alvarez have filed a motion for summary judgment, which is pending. (*See* Docs. 54, 56).

Plaintiff's complaint alleges the following as pertinent to Dr. Johnson. In September of 2012, plaintiff was attacked by inmates while confined at Columbia Correctional Institution. (Doc. 1, p. 6 ¶ 1).[1] Plaintiff was punched and kicked in the jaw, resulting in numerous injuries to his face and jaw. (*Id*. ¶¶ 2, 3). Plaintiff was seen by medical, placed in confinement and, after sixty days, transferred to ACI. (*Id*. ¶¶ 4, 9). Upon arriving at ACI, plaintiff signed up for sick call several times, complaining of pain in his jaw and describing the circumstances of his injury. (*Id*., p. 7 ¶¶ 10, 11). Plaintiff described constant pain, difficulty eating, and that his jaw popped loudly when he opened his mouth. (*Id*. ¶¶ 12, 13, 31, 32). Plaintiff alleges that Dr. Johnson is the dentist at ACI; that Johnson saw plaintiff on numerous occasions after plaintiff was referred to him by defendant Dr. Alvarez (a medical doctor at ACI); and that Johnson repeatedly sent plaintiff back to Dr. Alvarez without providing care, thereby delaying treatment. (*Id*., p. 8 ¶¶ 17, 18). Dr. Johnson eventually ordered two x-rays of plaintiff's jaw. (*Id*. ¶¶ 19-21). Johnson reported that the first x-ray revealed no injury. (*Id*. ¶ 20). After more delay, Dr. Johnson ordered the second x-ray, which revealed plaintiff might have a dislocated TMJ joint. (*Id*. ¶ 21). Dr. Johnson ordered plaintiff a mouth guard, prescribed ibuprofen for pain, and referred plaintiff to an oral surgeon at the Reception and Medical Center ("RMC"). (*Id*. ¶¶ 22, 19, 23 and n.2). Based on these allegations, plaintiff claims Dr. Johnson

---

[1] References to page numbers are to those assigned by the court's electronic filing system.

denied or delayed proper care for his injured jaw, resulting in unnecessary pain and the risk of further injury or long-term damage. (*Id.*, p. 8 ¶ 19, p. 10 ¶¶ 33-36). Plaintiff's complaint attaches an informal grievance dated November 15, 2013, with response; two formal grievances (grievance log #1401-102-064 dated January 13, 2014, and grievance log #1403-102-013 dated March 1, 2014), with responses; and an appeal to the Office of the Secretary dated March 11, 2014 (grievance log #14-6-09248), with response. (Doc. 1, Attach.).

On September 17, 2015, defendant Dr. Johnson filed his motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that plaintiff failed to sufficiently exhaust his claim concerning Johnson's care, and is now procedurally barred (time barred) from doing so. (Doc. 42). Dr. Johnson seeks dismissal of plaintiff's claim with prejudice. (*Id.*, p. 13). Dr. Johnson's motion is accompanied by an affidavit of a Department of Corrections records custodian for inmate grievances, which attaches the same grievances plaintiff provided with his complaint. (Doc. 42, Johnson Aff. and Ex.). The court issued an order on September 21, 2015, providing plaintiff thirty days to respond. (Doc. 43). To date, plaintiff has not responded to defendant Johnson's motion.

DISCUSSION

Exhaustion Requirement

Title 42 U.S.C. § 1997e provides, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory pre-condition to suit. *Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 524-25, 122 S. Ct. 983, 988, 152 L.

Ed. 2d 12 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."). The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter*, 534 U.S. at 524, 122 S. Ct. 983. Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *Booth*, 532 U.S. at 734, 121 S. Ct. at 1825. "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378, 2387, 165 L. Ed. 2d 368 (2006) (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." 548 U.S. at 90-91.

The grievance procedure promulgated by the Florida Department of Corrections (FDC) requires an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and (3) submit an appeal to the Office of the Secretary. FLA. ADMIN. CODE rr. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.,* 627 F.3d 1215, 1218 (11th Cir. 2010). Grievances of a medical nature may bypass the informal grievance step and proceed directly to the institutional level. FLA. ADMIN. CODE rr. 33-103.006(3)(e), 33-103.008.

Procedure for Ruling on Motion to Dismiss for Failure to Exhaust Administrative Remedies

A failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *See Jones v. Bock*, 549 U.S. 199, 127 S. Ct.

910, 166 L. Ed. 2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act (PLRA). The court held that the defense of failure to exhaust should be treated as a matter in abatement. *Id*. at 1374. "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*quoting Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *Turner*, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendant's motion, and those in the plaintiff's response. *Id*. If they conflict, the court accepts the plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*.; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (*citing Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then

decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

Plaintiff's Administrative Grievances

The facts relevant to the exhaustion issue do not appear to be in dispute. Both parties rely on the following evidence of plaintiff's grievances. On November 15, 2013, plaintiff submitted an informal grievance to the dental department at ACI stating:

> I signed paperwork months ago to be evaluated by an oral surgeon for an ongoing problem with the right side of my jaw. It is not getting better but worse. I've been taking [ibuprofen] 600 mg twice a day for 4 months this is not going to fix the matter. I believe that my jaw has been broken; it's in constant pain and discomfort. Can I please see the oral surgeon to take care of this issue. It feels like my jaw is in the back of my mouth.

(Doc. 1, p. 15). Plaintiff received a response on November 25, 2013 by third-party S. Watts, who informed plaintiff: "Currently you are on a list to be brought back into the clinic for an impression. We do not have a full-time dentist which makes our wait times longer." (*Id*.).

On January 13, 2014, while still confined at Apalachee CI, plaintiff filed a formal grievance at the institutional level stating, in relevant part:

> Grievant contends that he has accessed sick-call approximately 5 or 6 times regarding his jaw-bone. Specifically, grievant states excruciating pain moves from the bottom of the chin, to the top of his head. It hurts to open his mouth to eat, or even to just casually move. Grievant knows by the pain he is experiencing daily, that something is severely wrong.
>
> However, medical staff issued ibprofen [sic] to cure grievant's pain. Grievant has made it emphatically clear to staff that more extensive treatment is required. . . .

> . . . .
>
> Please see to it that more sufficient medical treatment commences to cure the pain in grievant's jaw. Morever, since grievant has been charged each time for accessing sick-call, grievant[']s request suggests that the next treatment is not charged.

(Doc. 1, p. 18 (grievance log #1401-102-064)). Plaintiff's formal grievance was forwarded to the institution's Chief Health Officer, defendant Dr. Alvarez, for response. *See* FLA. ADMIN. CODE r. 33-103.008(a). Dr. Alvarez denied plaintiff's grievance on January 15, 2014, explaining: "Your Request for Administrative Remedy or Appeal has been reviewed, evaluated and responded to as follows: You were seen on 1/10/14 and you were ordered something for pain. You are being treated adequately, at this time." (Doc. 1, p. 20).

On March 1, 2014, while still confined at Apalachee CI, plaintiff filed another formal grievance at the institutional level stating, in relevant part:

> When received at Columbia Correctional Institute I was given a placement card to the dorm. When I entered the dorm I was attacked by several individuals trying to get my possessions. I got messed up pretty bad by them kicking me in the jaw, causing severe pain. This problem continued in the dorm so I went physic [sic] and the nurse admitted me, and the nurse then saw how messed up I was. . . . Then adventitiously [sic] they transferred me to [Apalachee CI].
>
> I then wrote to medical complaining about my jaw and the only thing they did for me was prescribe ibprofin [sic] which was only temporary relief for the pain, not to resolve my problem. I requested an xray [sic] be done, because I know there is something seriously wrong with my jaw for the pain it has been causing. . . .They told me it was a dental issue, so I went and seen dental requesting an xray [sic], and was refused and there[sic] response was they would take an impression and issue me a mouth piece. . . .
>
> I am requesting that an xray [sic] be done on my jaw to determine

if in fact my jaw was dislocated, and correct the problem that has been going on for almost 2 years. I've been through the sick call protocol on several occasions, but yet the medical dept. fails to correct my problem with my jaw. I ask that this remedy that I am requesting be granted.

(Doc. 1, p. 16 (grievance log #1403-102-013)). Plaintiff's formal grievance was forwarded to Dr. Alvarez for response. Dr. Alvarez denied plaintiff's grievance on March 4, 2014, explaining: "Your Request for Administrative Remedy or Appeal has been reviewed, evaluated and responded to as follows: You had facial x-rays done on 12/18/13 and it states the mandible (jawbone) is intact." (Doc. 1, p. 17).

On March 11, 2014, while still confined at Apalachee CI, plaintiff filed an appeal to the Office of the Secretary stating, in relevant part:

> Grievant was housed at Columbia CI-Main Unit in August, 2012, when he was attacked by several inmates. One of the inmates kicked grievant on the right side of his face, apparently damaging a portion of his jaw. Grievant since that time has suffered due to pain which travels from his jaw, to his ear, to the top of his head. When even a layman can look at grievant's bone petruding [sic] a half an inch out of his face, but medical personell [sic] refuse to acknowledge this, is a wanton infliction of pain, violation grievant's 8th and 14th Amendment rights. . . . Upon arrival to Apalachee East Unit, grievant accessed sick call multiple times to seek adequate results, to no avail. Temporary relief, through ibuprofen and naproxen, or a mouth guard have been provided, but does not resolve the particular matter. Subsequent to the December 18, 2013 x-rays, grievant avers those x-rays did not accurately depict the correct location of the appointed pain. Further it is the contention of grievant that a specialist is required to perform proper examination of grievant's challenged issue.

(Doc. 1, pp. 21, 14 (grievance log #14-6-09248)). Plaintiff's appeal was denied on May 23, 2014, with this response:

> Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.

>Please be advised that this office cannot corroborate your allegations against the health care staff.
>
>It is the responsibility of your Chief Health Officer to determine the appropriate treatment regimen for the condition you are experiencing. This includes speciality consults, medication prescriptions, diagnostic testing, specialty equipment and/or passes.
>
>You are encouraged to cooperate with your health care staff by following the treatment regimen prescribed.
>
>Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

(Doc. 1, p. 22).

Defendant Johnson contends that plaintiff's grievances did not "sufficiently grieve" Dr. Johnson's alleged delays, because (1) plaintiff's grievance appeal did not make any claim that he was improperly denied a second x-ray, nor did plaintiff request a second x-ray; instead, plaintiff claimed that the first x-ray did not depict the correct location of his pain; (2) although plaintiff's grievance appeal requested referral to an oral surgeon, that issue had not been "preserved", because plaintiff did not allege that he had previously requested and been denied a referral to an oral surgeon; (3) plaintiff's grievance appeal did not reference dental staff, any dentist, or Dr. Johnson and (4) plaintiff's grievance appeal did not include any claim that any dental staff, or Dr. Johnson, denied and/or delayed adequate medical treatment. (Doc. 42, pp. 11-12).

"[W]hile § 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require that he do more than that." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000). For example, "[a] prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." *Parzyck*, 627 F.3d at 1218-19

(*citing Jones*, 549 U.S. at 219). The Supreme Court in *Jones* held that state prisoners' § 1983 actions were not automatically rendered noncompliant with the PLRA's administrative exhaustion requirement by the fact that not all defendants named in their complaints had been named in previous administrative grievances. The Court held that the PLRA did not impose a "name all defendants" requirement as part of exhaustion, and that the state corrections department's policy did not contain any provision specifying who must be named in a grievance. *Id.* at 219. The Court concluded: "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 219.

>    The FDC defines the purpose of its inmate grievance procedure as follows:

>> The purpose of the grievance procedure is to provide an inmate with a channel for the administrative settlement of a grievance. In addition to providing the inmate with the opportunity of having a grievance heard and considered, this procedure will assist the department by providing additional means for internal resolution of problems and improving lines of communication. This procedure will also provide a written record in the event of subsequent judicial or administrative review.

FLA. ADMIN. CODE r. 33-103.001(1).

The FDC's policy does not contain any provision specifying who must be named in a grievance, or the level of detail required when grieving a medical claim. The only FDC requirements regarding the contents of grievances are that they must be clearly stated, accurately state the facts, and "address only one issue or complaint." FLA. ADMIN. CODE r. 33-103.007(2)(d), (2)(e) and (2)(f).

Although plaintiff's March grievances did not name Dr. Johnson or "dental staff", they "accomplished § 1997e(a)'s purpose by alerting prison officials to the problem and giving them the opportunity to resolve it before being sued." *Parzyck* at 1219. Plaintiff's grievances were sufficient to exhaust his claim against Dr. Johnson arising from the continuing failure to provide adequate diagnostic care and treatment for his injured jaw.

## CONCLUSION

Plaintiff properly exhausted his administrative remedies with respect to his claim against Dr. Johnson by complying with the FDC's requirements and completing the administrative review process before filing this lawsuit.

Accordingly, it is respectfully RECOMMENDED:

1. That defendant Dr. Johnson's motion to dismiss (doc. 42) be DENIED.

2. That defendant Dr. Johnson be ordered to file an answer to plaintiff's complaint within a time certain.

At Pensacola, Florida this 4th day of December, 2015.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th C<small>IR</small>. R. 3-1; 28 U.S.C. § 636.