UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CHAD D. CORDREY,

     Plaintiff,

v.                            Case No: 5:15cv33/MW/CJK

CORIZON, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This prisoner civil rights case, brought under 42 U.S.C. § 1983, is before the court upon defendants Corizon and Dr. Alvarez's motion for summary judgment (doc. 54) and evidentiary materials (doc. 55). Plaintiff has responded in opposition (doc. 59), with evidentiary materials (doc. 60). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After careful consideration, the undersigned concludes that defendants' motion should be granted.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Florida penal system currently confined at the Reception and Medical Center (RMC). (Doc. 64). Plaintiff was confined at Apalachee Correctional Institution (Apalachee CI) at the time of the events giving

rise to this lawsuit.  (Doc. 1).  Plaintiff's complaint names four defendants: Corizon, a private company contracting with the Florida Department of Corrections to provide medical services to inmates at Apalachee CI; M. Johnson ("Dr. Johnson"), a dentist at Apalachee CI; Jorge Alvarez ("Dr. Alvarez"), the Chief Health Officer at Apalachee CI; and "John Doe", subsequently identified as Dr. Jeffrey Render, an oral surgeon at RMC.  Plaintiff claims the defendants delayed and denied proper medical treatment for his injured jaw, in violation of the Eighth Amendment of the United States Constitution.   As relief, plaintiff seeks a declaration that the defendants violated his constitutional rights, injunctive relief, $250,000.00 in compensatory damages against each defendant, and $500,000.00 in punitive damages against each defendant.  (Doc. 1).

A scheduling order was issued on July 24, 2015, providing for discovery. (Doc. 29).  Plaintiff voluntarily dismissed his claim against Dr. Render on August 17, 2015.  (*See* Docs. 32, 36, 46).  Defendants Corizon and Alvarez filed their motion for summary judgment after the close of discovery, on November 25, 2015.  (Docs. 54, 55).   Plaintiff and defendant Johnson are proceeding pursuant to a separate scheduling order.  (Doc. 63).[1]

---

[1]Defendant Johnson had not been served at the time the July 24, 2015 scheduling order issued. Accordingly, a separate scheduling order was issued on February 1, 2016, with a discovery deadline of May 2, 2016.  (Doc. 63).

FACTS

The following facts are drawn from the evidence in the summary judgment record (docs. 55, 60), and from those allegations of plaintiff's verified complaint (doc. 1) that may be considered on summary judgment.[2]  This statement of facts does not include any statements made by plaintiff in his response (doc. 59) to the summary judgment motion, because the response is neither verified, sworn, nor accompanied by a sworn affidavit.  *See Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (district court properly declined to consider unsworn affidavit filed in support of § 1983 plaintiff's motion to alter or amend judgment); *see also Holloman v. Jacksonville Housing Auth.*, 2007 WL 245555 at *2 (11th Cir. 2007) (reiterating that "unsworn statements, even from *pro se* parties, should not be 'consider[ed] in determining the propriety of summary judgment'" (*quoting Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980))).  This statement of facts also does not include information from defendants' evidentiary materials relating to care plaintiff received for medical issues unrelated to the events in question, such as treatment for anxiety,

---

2 "A *pro se* plaintiff's complaint, . . . if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence.  Nevertheless, '[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge.'" *Howard v. Memnon*, 572 F. App'x 692, 694 (11th Cir. 2014) (*citing Murrell v. Bennett*, 615 F.2d 306, 310 n.5 (5th Cir. 1980), *and quoting* Fed. R. Civ. P. 56(c)(4)) (footnote omitted).  Conclusory statements are inadmissible because they are not based on personal knowledge.  *Lloyd v. Card*, 283 F. App'x 696, 701 (11th Cir. 2008) (*citing Marshall v. City of Cape Coral, Fla.*, 797 F.2d 1555, 1559 (11th Cir. 1986) ("inferences based upon speculation are not reasonable")).

hemorrhoidal flares, an injury to plaintiff's finger, and injuries (lacerations, bites, abrasions) to plaintiff's torso and arms from an unrelated inmate altercation.  Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff."  *See Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005).

Plaintiff was previously housed at Columbia Correctional Institution.  (Doc. 1 ¶ 1).  In September of 2012, while housed at Columbia CI, plaintiff was the victim of an inmate assault.  (Doc. 1 ¶ 1; *see also* Doc. 55, Ex. A-1, p. 296).[3]  Plaintiff was punched and kicked in the jaw during the attack.  (Doc. 1 ¶¶ 2, 3).  Plaintiff was seen by medical at Columbia CI, placed in confinement and, after sixty days, transferred to Apalachee CI.  (Doc. 1, ¶¶ 4, 9).  Upon arriving at Apalachee CI, plaintiff signed up for sick call several times, complaining of constant pain in his jaw, difficulty eating, and his jaw popping loudly when he opened his mouth.  (Doc. 1 ¶¶ 10-13, 31, 32).

On April 7, 2014, defendant Dr. Alvarez saw plaintiff in the chronic illness clinic.  (Doc. 55, Ex. A, Alvarez Decl. ¶ 7; Doc. 55, Ex. A-1, p. 234).  Dr. Alvarez

---

3Exhibit A-1 is comprised of excerpts from plaintiff's medical records.  References to page numbers are to the numbers designated at the bottom right-hand corner of the page.

noted that plaintiff had a history of facial trauma and pain in his right temporomandibular joint ("TMJ") and that plaintiff was complaining of "click and deformity over right TMJ". (Doc. 55, Ex. A, Alvarez Decl. ¶ 7; Doc. 55, Ex. A-1, pp. 234, 303). After examining plaintiff, Dr. Alvarez assessed plaintiff with "R TM Joint subluxation". (Doc. 55, Ex. A-1, p. 234). Dr. Alvarez prescribed Naprosyn for pain and ordered an x-ray of plaintiff's TMJ, with follow-up in two weeks. (Doc. 55, Ex. A, pp. 234, 248, 303).

An x-ray of plaintiff's TMJ was performed two days later, on April 9, 2014. (Doc. 55, Ex. A, Alvarez Decl. ¶ 9; Doc. 55, Ex. A-1, pp. 302-303). The radiology report noted a prior x-ray of plaintiff's facial bones on December 15, 2013, and a prior x-ray of plaintiff's skull on July 19, 2013. (Doc. 55, Ex. A-1, p. 302). Interpreting the April 9, 2014 x-ray, the radiologist found: "No obvious fractures or dislocation is noted. Symmetric translation of the mandibular condyle is noted on each side. Intact body and ramus of the mandible." (Doc. 55, Ex. A-1, p. 302). The x-ray impression revealed "Grossly unremarkable temporomandibular joints. No dislocation is noted." (Doc. 55, Ex. A, Alvarez Decl. ¶ 9; Doc. 55, Ex. A-1, p. 302). The radiologist recommended follow up as clinically indicated. (*Id.*).

On April 21, 2014, Dr. Alvarez met with plaintiff for follow-up on his x-ray results, his complaint of right TMJ subluxation, and other unrelated issues. (Doc. 55,

Ex. A, Alvarez Decl. ¶ 10; Doc. 55, Ex. A-1, p. 448).   Dr. Alvarez performed a physical examination, reviewed plaintiff's x-rays, which revealed normal facial bones including mandible, and ordered a dental consultation for evaluation of plaintiff's subjective complaints relating to his jaw.  (Doc. 55, Ex. A, Alvarez Decl. ¶¶ 10, 13; Doc. 55, Ex. A-1, pp. 448, 248).   Dental services were not and are not provided by Corizon.  (Doc. 55, Ex. B, Cherry Decl. ¶ 7).   Dental personnel at Apalachee CI are not employees of Corizon.  (Doc. 55, Ex. A, Alvarez Decl. ¶ 27).

Plaintiff was seen on a dental consult on May 8, 2014, at which time the dentist (defendant Dr. Johnson) noted plaintiff's stated history of having been in an altercation two years prior where he was struck by another inmate at the right TMJ area.  (Doc. 55, Ex. A-1, p. 283 (clearer image at Doc. 68, p. 283)).   Upon physical examination, Dr. Johnson found "Clicking upon opening (Rt side)".  (*Id.*).   Dr. Johnson noted that a night guard had been made and delivered on January 22, 2014. (*Id.*).   Dr. Johnson found that the panorex (x-ray) "appears normal."  (*Id.*).   Dr. Johnson provided a provisional diagnosis of "Right side TMJ pain upon opening", and recommended a specialty evaluation by an oral surgeon.  (*Id.*).[4]

---

[4] Although Dr. Alvarez states he saw plaintiff on May 14, 2014, (doc. 55, Ex. A, Alvarez Decl. ¶ 12 (referencing Ex. A-1, p. 11)), the medical records establish that the May 14 visit occurred in 2015, not 2014.  (Doc. 55, Ex. A-1, p. 11).

Dr. Alvarez saw plaintiff two weeks later, on May 23, 2014, for follow up on plaintiff's subjective complaints of "R TMJ subluxation to extreme jaw movements" and other, unrelated issues.  (Doc. 55, Ex. A, Alvarez Decl. ¶ 13; Doc. 55, Ex. A-1, p. 449, 246).  Dr. Alvarez's physical examination revealed right TMJ tenderness with no obvious deformity.  (Doc. 55, Ex. A, Alvarez Decl. ¶ 13, Doc. 55, Ex. A-1, p. 449).  Alvarez noted that plaintiff's x-ray revealed normal facial bones including mandible.  (*Id.*, p. 449).  Dr. Alvarez discontinued plaintiff's prescription for Naprosyn and prescribed Ibuprofen to alleviate plaintiff's complaints of pain.  (Doc. 55, Ex. A, Alvarez Decl. ¶ 13; Doc. 55, Ex. A-1, p. 246).  Dr. Alvarez also prescribed Propranolol to alleviate plaintiff's symptoms relating to trigeminal neuropraxia (nerve pain that can be associated with trauma to the face), and scheduled a follow up in one month to re-evaluate plaintiff's response to the new medications.  (Doc. 55, Ex. A, Alvarez Decl. ¶ 13; Doc. 55, Ex. A-1, pp. 246, 449).  Plaintiff was instructed to access sick call when necessary, or return to medical if his symptoms got worse.  (Doc. 55, Ex. A-1, p. 449).  On June 10, 2014, Dr. Alvarez discontinued plaintiff's prescription for Propranolol, and prescribed Metoprolol.  (Doc. 55, Ex. A-1, p. 246).

Dr. Alvarez saw plaintiff on June 27, 2014, for follow up on plaintiff's subjective complaints of right TMJ subluxation to extreme jaw movements, and other unrelated issues.  (Doc. 55, Ex. A, Alvarez Decl. ¶ 14; Doc. 55, Ex. A-1, p. 445).  Dr.

Alvarez examined plaintiff, noting: "No JVD R TMJ tenderness no obvious deformity". (Doc. 55, Ex. A-1, p. 445). Dr. Alvarez ordered a continuation of the present plan of care.   (Doc. 55, Ex. A, Alvarez Decl. ¶ 14; Doc. 55, Ex. A-1, p. 445). Plaintiff was instructed to return to medical as needed. (*Id*.).[5]

On August 4, 2014, plaintiff had a dental consult with oral surgeon Dr. Render at RMC. (Doc. 55, Ex. A, Alvarez Decl. ¶ 15; Doc. 55, Ex. A-1, p. 282 (clearer image at Doc. 68, p. 282)). Dr. Render reported that plaintiff complained of a constant click with pain; that plaintiff claimed no interference with eating or sleeping; that plaintiff claimed no improvement with Motrin or the mouthguard; that plaintiff stated his prior Excedrin Migraine provided some improvement; and that his usual pain level was 2/10, increasing to 3/10 with popping. (Doc. 55, Ex. A-1, p. 282 (clearer image at Doc. 68, p. 282)). Dr. Render made these findings: "Panorex [x-ray] wnl [within normal limits]. Multiple deep wear facets max & mand anterior and posterior teeth.

_____

[5]Dr. Alvarez states in his declaration:

> Mr. Cordrey indicated that he was feeling better at this time. (Id.) As he was feeling better, I ordered a continuation of present plan of care and instructed Mr. Cordrey to return to medical as needed.

(Doc. 55, Ex. A, Alvarez Decl. ¶ 14 (citing Ex. A-1, p. 445)). As plaintiff points out in his summary judgment response (doc. 59, p. 3), plaintiff's medical records establish that plaintiff's statement that he was feeling better was made in the context of reporting on his hemorrhoidal flares, not his jaw. (Doc. 55, Ex. A-1, p. 445 ("He was c/o hemorrhoidal flares but he feels better now.")). Accordingly, the undersigned does not accept as fact either (1) that plaintiff reported his jaw was feeling better, or (2) that the reason Dr. Alvarez ordered a continuation of the present plan of care for plaintiff's jaw was because plaintiff stated he was feeling better.

Opens on vairable [sic] path with opening click on lateral deviation.  When coaxed into straight opening and closing no joint noise noted.  No trigger points, no muscle tenderness, no tenderness to palpa [last letter illegible] overlying joints.  Traumatic arthralgia." (*Id*.).  Traumatic arthralgia is joint pain from injury.  (Doc. 55, Ex. A, Alvarez Decl. ¶ 15.).  Dr. Render concluded that no oral and maxillofacial surgical treatment was indicated, and recommended "continued night guard wear" and to "consider for Excedrin Rx on routine basis."   (Doc. 55, Ex. A-1, p. 282 (clearer image at Doc. 68, p. 282)).[6]

Plaintiff was transferred back to Apalachee CI on August 18, 2014, and assessed by the Director of Nursing, Ms. Branch.  (Doc. 55, Ex. A, Alvarez Decl. ¶ 16; Doc. 55, Ex. A-1, pp. 22-23).

On September 3, 2014, plaintiff was seen by ARNP Parker, where he relayed complaints of constipation and of pain when he opened his mouth due to injury to the right side of his face.  (Doc. 55, Ex. A, Alvarez Decl. ¶ 17; Doc. 55, Ex. A-1, p. 20).

---

[6]Plaintiff alleges in his complaint that Dr. Render told him surgery was not an option because it cost too much.  (Doc. 1 ¶ 27).  The court does not accept plaintiff's allegation as fact in ruling on defendants Corizon and Alvarez's motion for summary judgment, because it is hearsay; it is contradicted by plaintiff's medical records; it is immaterial to the present motion for summary judgment because there is no evidence Dr. Alvarez based his treatment on, or was even aware of, this alleged statement by Dr. Render; it is undisputed that Dr. Render and other dental personnel are not employees of Corizon; and plaintiff has voluntarily dismissed his claim against Dr. Render.  *See Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (a court may not accept any facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them].")

ARNP Parker assessed plaintiff with facial pain and requested an x-ray of plaintiff's facial bones.  (Doc. 55, Ex. A, Alvarez Decl. ¶ 17; Doc. 55, Ex. A-1, p. 20, 34, 74, 301).  Dr. Alvarez submitted the radiology request the same day.  (Doc. 55, Ex. A-1, pp. 74, 301).

An x-ray of plaintiff's facial bones was performed on September 10, 2014. (Doc. 55, Ex. A, Alvarez Decl. ¶ 19; Doc. 55, Ex. A-1, pp. 73, 300-301).  The radiology report noted the prior x-ray of plaintiff's facial bones on December 18, 2013.  (Doc. 55, Ex. A-1, pp. 73, 300).  Interpreting the September 10, 2014 x-ray, the radiologist found: "No displaced fracture is identified.  No aggressive lytic or blastic lesion.  No radiopaque foreign body.  There is a cross bite.  Question of a right TMJ dislocation."  (*Id*.).  The x-ray impression revealed: "No displaced fracture identified.  Question of a right TMJ dislocation.  There is a cross bite." (*Id*.).  The radiologist recommended:  "dedicated TMJ x-rays. . . .  Correlate clinically with history."  (*Id*.).

On October 1, 2014, plaintiff was seen by ARNP Parker during chronic illness clinic, at which time he complained of continuing jaw pain.  (Doc. 55, Ex. A, Alvarez Decl. ¶ 20; Doc. 55, Ex. A-1, p. 26).  Plaintiff was referred to Dr. Alvarez for an assessment of possible TMJ discloation.  (*Id*.).

On October 9, 2014, Dr. Alvarez saw plaintiff for follow-up of his complaints, including right TMJ subluxation to extreme jaw movements.  (Doc. 55, Ex. A, Alvarez Decl. ¶ 21; Doc. 55, Ex. A-1, p. 18).  Dr. Alvarez noted that plaintiff's x-ray of September 10, 2014, indicated normal facial bones, including the mandible.  (*Id*.).  Dr. Alvarez's physical assessment of plaintiff and review of his chart, consultation reports and x-ray reports indicated "that clinically that there was no presentation of a dislocation."  (Doc. 55, Ex. A, Alvarez Decl. ¶ 21).  Dr. Alvarez prescribed Naproxen to alleviate symptoms of pain, and advised plaintiff to access sick call when necessary, or return to medical if his symptoms got worse.  (Doc. 55, Ex. A, Alvarez Dec. ¶ 21; Doc. 55, Ex. A-1, pp. 18, 33).

Plaintiff filed this lawsuit on February 23, 2015.  The complaint alleges constant pain in plaintiff's jaw, pain when talking and eating, and that his jaw was "popping loudly".  (Doc. 1, ¶¶ 12, 13, 31, 32).

After filing this lawsuit, plaintiff was seen on March 31, 2015, by ARNP Parker at the Apalachee CI chronic illness clinic.  (Doc. 55, Ex. A-1, p. 25).  ARNP Parker noted that plaintiff continued to complain of pain in the right TM joint and that he reported a history of possible TMJ dislocation.  (*Id*.).  ARNP Parker assessed plaintiff with "Right TMJ Subluxation/possible TMG [sic] Dislocation."  (*Id*.).  Parker continued plaintiff's "Present Plan of Care" and ordered "X-ray-dedicated

TMJ". (*Id.*). ARNP Parker submitted a radiology request for an x-ray of plaintiff's "Facial Bones TMJ". (Doc. 55, Ex. A-1, p. 72).

The x-ray of plaintiff's facial bones was performed on April 8, 2015. (Doc. 55, Ex. A-1, pp. 71, 72). The report noted the prior x-ray of plaintiff's facial bones on September 10, 2014. (Doc. 55, Ex. A-1, pp. 71, 298). Interpreting the April 8, 2015, x-ray, the radiologist found: "Multiple views of the facial bones demonstrate no evidence of acute bony or soft tissue injury. The orbital rims, nasal bones, and paranasal sinus walls are intact. The paranasal sinuses are clear. There is no radiopaque foreign body or localized soft tissue swelling. The mandible is intact." (Doc. 55, Ex. A-1, pp. 71, 298). The x-ray impression revealed: "No obvious evidence of an acute fracture injury involving the facial bones." (*Id.*). The radiologist recommended follow up as clinically indicated. (*Id.*).

On April 22, 2015, plaintiff was seen by ARNP Parker for reveiw of his x-ray. (Doc. 55, Ex. A, Alvarez Decl. ¶ 24; Doc. 55, Ex. A-1, p. 14). Parker advised plaintiff that the x-ray revealed normal. (*Id.*). Parker performed a physical examination which revealed: "Face - Right Mandible - Normal speech pattern and moovement [sic] is noted. [N]ormal opening of the mouth is noted. No deformity of the right face is noted." (*Id.*). ARNP Parker assessed plaintiff as having a history of right TMJ pain, and referred plaintiff to Dr. Alvarez for an appointment the following

week "to assess the [n]eed for MRI of the right TMG/Mandible [sic]." (*Id*.). Parker prescribed Motrin – a medication used to treat pain or inflammation. (Doc. 55, Ex. A, Alvarez Decl. ¶ 24; Doc. 55, Ex. A-1, pp. 14, 30).

On April 28, 2015, Dr. Alvarez saw plaintiff for his complaints of facial pain and poor vision. (Doc. 55, Ex. A, Alvarez Decl. ¶ 25; Doc. 55, Ex. A-1, p. 13). Alvarez noted that he and dental personnel had assessed plaintiff on several occasions and that plaintiff was able to produce the deformity on demand. (*Id*.). Dr. Alvarez educated plaintiff on avoiding this behavior, explaining that it damages the TMJ and pulls on the trigeminal and facial nerves. (*Id*.). Dr. Alvarez performed a physical examination of plaintiff which revealed no abnormalities. (*Id*.). Alvarez submitted a consultation request for plaintiff to see an optometrist for his vision complaint. Dr. Alvarez also requested a CT scan of the TMJ/Facial area, describing plaintiff's diagnosis as "Questionable right TMJ Dislocation". (Doc. 55, Ex. A, Alvarez Decl. ¶ 25; Doc. 55, Ex. A-1, pp. 280, 12-13, 281).

Dr. Alvarez's request for a CT scan was submitted on a form addressed to the Department of Corrections – Office of Health Services. (Doc. 55, Ex. A-1, p. 280). The top portion of the form contains Dr. Alvarez's request. The bottom half of the form is intended to document the date it was reviewed by a "Physician Advisor", and whether it was approved or disapproved. (*Id*.). The form states: "If the Physician

Advisor does not approve Request, a Memorandum will be sent to the Chief Health Officer." (*Id*.).  The bottom of Dr. Alvarez's request form is not filled in, and no memorandum appears in the medical records provided by the defendants.  (*Id*.).  Defendants have, however, submitted the declaration of Daniel Cherry, D.O.  (Doc. 55, Ex. B).  Dr. Cherry is employed by defendant Corizon as the Regional Medical Director for Region I, Florida.  (Doc. 55, Ex. B, Cherry Decl. ¶¶ 3, 5).  Dr. Cherry's responsibilities include, but are not limited to, reviewing and making dispositions for specialty consultations as well as procedures initiated by medical staff at the institutions in his region.  (*Id*. ¶ 5).  Dr. Cherry reviewed the pertinent computerized entries or emails regarding Dr. Alvarez's consult request for a CT scan of the TMJ of plaintiff's jaw.  (Id. ¶¶ 4, 6).  Dr. Cherry states that based on the information accompanying the request, including notes from plaintiff's primary medical provider outlining plaintiff's physical symptoms and clinical presentation, he (Cherry) recommended that as an alternative to a CT scan, Dr. Alvarez arrange another dental consult for plaintiff for possible referral to an oral surgeon.  (*Id*. ¶ 7).  Cherry states that his recommendation "was based on his medical opinion that a consult with dental or an oral surgeon was the best plan of treatment based upon plaintiff's complaints and physical presentations."  (*Id.* ¶ 8).

On April 30, 2015, Dr. Alvarez noted Dr. Cherry's recommended alternative to a CT scan and instruction to seek a referral to an oral surgeon. (Doc. 55, Ex. A, Alvarez Decl. ¶ 26; Doc. 55, Ex. A-1, p. 12). On May 14, 2015, Dr. Alvarez saw plaintiff to advise him of the result of his request for a CT scan. (Doc. 55, Ex. A, Alvarez Decl. ¶ 28; Doc. 55, Ex. A-1, pp. 11, 189). Alvarez noted that plaintiff still complained of facial pain and deformity when he (plaintiff) stressed the joint. (Doc. 55, Ex. A-1, pp. 11, 189). Dr. Alvarez advised plaintiff that the request for a CT scan was postponed until the alternative treatment plan of a dental consult occurred. (Doc. 55, Ex. A, Alvarez Decl. ¶ 28; Doc. 55, Ex. A-1, pp. 11, 189). Dr. Alvarez continued plaintiff's present plan of care and referred plaintiff to dental for "possible maxillofacial assessment." (Doc. 55, Ex. A-1, p. 145). The dental consult occurred on May 19, 2015, with defendant Dr. Johnson. (Doc. 55, Ex. A-1, p. 145). Then, on May 22, 2015, plaintiff received a consult with an optometrist. (Doc. 55, Ex. A-1, pp. 186, 278-279; *see also* Doc. 68, pp. 278-279).

On June 17, 2015, and July 1, 2015, Dr. Alvarez saw plaintiff for follow-up on an unrelated issue (injuries plaintiff sustained during an altercation with another inmate). (Doc. 55, Ex. A, Alvarez Decl. ¶¶ 33, 34; Doc. 55, Ex. A-1, pp. 1, 2, 29). Plaintiff made no complaints of jaw pain during these visits. (*Id*.). Plaintiff failed to

show for a scheduled sick call on August 27, 2015.  (Doc. 55, Ex. A, Alvarez Decl. ¶ 35; Doc. 55, Ex. A-1, p. 174).

Plaintiff was transferred to Graceville Correctional Facility on or about October 9, 2015.  (Doc. 48).  On October 16, 2015, medical personnel at Graceville CF submitted an x-ray request for plaintiff to receive x-rays of his right TMJ and mandible, noting:  "Have inmate push ® jaw out and x-ray."  (Doc. 55, Ex. A, Alvarez Decl. ¶ 37; Doc. 55, Ex. A-1, p. 296).  On October 29, 2015, separate sets of x-rays were taken: one of "the mandible" (doc. 55, Ex. A-1, p. 295; doc. 60, Ex. A, p. 3), and the other of "the right temporomandibular joint" (doc. 60, Ex. A, p. 4).  The x-rays generated separate radiology reports dated October 19, 2015.  (Doc. 60, Ex. A, pp. 3, 4).  The defendants have submitted one report – the report interpreting the mandible x-ray.  (Doc. 55, Ex. A-1, p. 295).  Plaintiff has submitted both reports.  (Doc. 60, Ex. A, pp. 3-4).  The October 19, 2015, x-ray of plaintiff's mandible captured lateral views.  The radiologist found: "Multiple views of the mandible show no evidence of acute bony injury.  The temporomandibular joints are intact." (Doc. 60, Ex. A, p. 3; *see also* Doc. 55, Ex. A-1, p. 295).  The radiologist's impression was: "No acute fracture of the mandible."  (*Id.*).  The radiologist recommended follow up as clinically indicated.  (*Id.*).

The October 19, 2015, x-ray of plaintiff's right TMJ captured open and closed lateral views. (Doc. 60, Ex. A, p. 4). The radiologist found: "No acute fractures of the mandible identified. There is normal positioning of the condylar process within the TMJ on closed mouth. The condylar process appears dislocated anteriorly on open-mouth views. Clinical correlation." (*Id.*). The radilogist's impression was: "1. No acute fracture of the mandible. 2. Appearance of anterior dislocation on open-mouth views. Clinical correlation. This may [be] further evaluated with MRI." (*Id.*). The radiologist recommended "follow up as clinically indicated." (*Id.*).

Defendant Dr. Alvarez states that in his medical opinion, the examinations and x-rays indicate that plaintiff did not, and does not, have a dislodged TMJ; rather, plaintiff is able to actively partially dislodge it at will. (Doc. 55, Ex. A, Alvarez Decl. ¶ 38). Dr. Alvarez states that dislodgement will not occur unless plaintiff purposefully engages in the act. (*Id.* ¶ 40). Dr. Alvarez goes on to explain that plaintiff has been given multiple x-rays, referred to dental personnel and oral surgeons (who are not Corizon employees) for evaluation, been given a mouth guard to wear at night, been provided various pain medications to alleviate his subjective complaints of pain, and been advised on multiple occasions to stop purposefully dislodging his jaw. (*Id.* ¶¶ 39, 40). Dr. Alvarez states that his review of plaintiff's medical records reflects that plaintiff's medical needs were not ignored, nor was he

denied appropriate medication; rather his medical treatment was appropriate and within the prevailing standard of care.  (*Id*. ¶ 41).  Dr. Alvarez relied solely on his medical judgment to determine appropriate medical care and how to provide it, and at no time did Alvarez base his medical care of plaintiff on anything other than his medical judgement.  (*Id*. ¶ 42).

DISCUSSION

Legal Standards

    A.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 160 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").  In applying this standard, the court must view the facts in the light most favorable to the non-moving party (here, the plaintiff) and draw all reasonable inferences in favor of that party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th

Cir. 2009).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *Id.*  An issue is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party.  *Id.*  "[T]he nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'"  *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011).  Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact."  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995).

B.     Eighth Amendment Standard

A prisoner claiming he was deprived of medical care in violation of the Eighth Amendment must show "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment

or one that is so obvious that even a lay person would easily recognize the necessity

for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)

(*citing Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994),

*overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508,

153 L. Ed. 2d 666 (2002)); *see also Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct.

1970, 128 L. Ed. 2d 811 (1994) (holding that a serious medical need is one that, if left

unattended, "pos[es] a substantial risk of serious harm.").

Deliberate indifference has three components:  "(1) subjective knowledge of

a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere

negligence." *Farrow*, 320 F.3d at 1245 (quotations omitted).  This means that the

official must have been actually aware of the risk of harm: "the official must both be

aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Allegations of negligence and medical malpractice do not state a plausible claim for

relief under the Eighth Amendment or § 1983. *Taylor v. Adams*, 221 F.3d 1254, 1258

(11th Cir. 2000).

Delay in providing "medical treatment known to be necessary" can qualify as

deliberate indifference.  *H.C. ex rel. Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th

Cir. 1986); *see also Ancata v. Prison Health Servs., Inc*., 769 F.2d 700, 704 (11th Cir.

1985) ("[I]f necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out.").  That delay, however, must be "tantamount to unnecessary and wanton infliction of pain".  *Hill* at 1188 (internal quotation marks and citations omitted).  "[The] delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay." *Hill* at 1188-1189.

<u>Application of Summary Judgment Standard to Plaintiff's Claims</u>

Plaintiff claims defendant Dr. Alvarez deliberately delayed and denied proper medical treatment for his known, serious, painful jaw condition, in violation of the Eighth Amendment.  (Doc. 1).  Plaintiff seeks to hold Corizon liable on the theory that Corizon established practices, policies, and procedures of "not allowing the Plaintiff to receive proper medical treatment(s) due to the cost of the treatment(s)." (*Id*. ¶ 29).  Plaintiff summarizes: "The Plaintiff's injured jaw could have been properly and timely treated if not for the delay and denial of treatment by Defendants Alvarez, Johnson, and Doe [Dr. Render] and the practices, policies, and procedures of Defendant Corizon."  (Doc. 1 ¶ 36).

The summary judgment record reveals no genuinely disputed material facts. Two of the three factual issues raised in plaintiff's response – that plaintiff never

reported to Dr. Alvarez that his jaw was feeling better, and that there were two x-rays and two radiology reports generated on October 19, 2015 (doc. 59, p. 4) – were resolved in plaintiff's favor, above.  Plaintiff's third factual issue raises speculation whether an x-ray was actually taken on April 9, 2014.  Plaintiff points to the radiology report dated September 10, 2014, and asserts that the fact that the report references as the "prior study" the December 18, 2013 x-ray and not the April 9, 2014 x-ray, raises a question whether an imaging test actually occurred on April 9, 2014.  Plaintiff also points to the absence of the April 9, 2014 x-ray as a "prior study" in the April 8, 2015 radiology report.  (Doc. 59, pp. 3-4 (characterizing the April 9, 2014 x-ray as "supposedly taken")).  Plaintiff's speculation does not raise a genuine factual dispute as to whether an x-ray of plaintiff's TMJ was taken on April 9, 2014, because the medical evidence establishes that an x-ray was performed on that date.  (Doc. 55, Ex. A-1, pp. 302-303).  The fact that the x-ray was not submitted as a prior study in connection with the September 10, 2014 report, or the April 8, 2015 report does not raise a genuine question whether the April 9, 2014 x-ray was performed.

As there are no genuine disputes of material fact, the court must determine whether defendants Corizon and Alvarez are entitled to judgment as a matter of law. Defendants argue that neither the medical reports from the multiple x-rays taken of plaintiff's jaw, nor the medical opinions of the physicians and specialty consultants

who examined plaintiff, support a finding that plaintiff has a serious medical need that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. (Doc. 54, p. 10).  Defendants argue, in the alternative, that even assuming arguendo that plaintiff can establish a serious medical need (an assumption made solely for purposes of this motion), they are entitled to summary judgment because the evidence demonstrates they were not subjectively indifferent to plaintiff's medical needs – they treated plaintiff at each medical encounter, performed numerous examinations, requested multiple x-rays and specialty consultations and provided plaintiff pain medication to alleviate his complaints of pain, notwithstanding the fact that they believed plaintiff was voluntarily causing subluxation to his jaw.  (Doc. 54, p. 10).

Plaintiff argues in response that his allegations of jaw popping, difficulty eating, difficulty talking and constant pain, combined with the September 10, 2014 radiology report finding a "[q]uestion of a right TMJ dislocation" (doc. 60, Ex. A, p. 1) and the October 19, 2015 radiology report finding "[a]ppearance of anterior dislocation on open-mouth views" of his right TMJ (doc. 60, Ex. A, p. 4), establish that his right TMJ dislocates when he opens his mouth, which is a serious medical condition.  (Doc. 59, p. 5).  As to deliberate indifference, plaintiff argues that defendant Dr. Alvarez knew that plaintiff's TMJ may be dislocated, but chose not to

provide further diagnostic testing (a CT scan or MRI) or necessary treatment (surgery) because of the cost.  (Doc. 59, p. 5).

The court need not decide whether plaintiff has established a serious medical need because his claim fails on the subjective component.  Plaintiff cannot prove Dr. Alvarez acted with an attitude of deliberate indifference.  The undisputed facts establish that between April 7, 2014 (the first documented care provided by Dr. Alvarez according to the parties' submissions), and October 9, 2015 (the approximate date plaintiff left Apalachee CI and was transferred to Graceville CF), Dr. Alvarez assessed plaintiff on numerous occasions, monitored plaintiff's condition, and provided the following diagnostic treatment and care for plaintiff's complaints relating to his jaw:  physical examinations; three x-rays, including a dedicated TMJ x-ray (April 9, 2014, September 10, 2014 and April 8, 2015); a request for a CT scan; three dental consultations (May 8, 2014, August 4, 2014, and May 19, 2015); and various pain medications.  Dr. Alvarez's diagnostic care and course of treatment was based on his medical judgment.  There is no evidence Alvarez's treatment was based on the cost of additional diagnostic procedures or treatment.  The October 19, 2015 radiology report finding that plaintiff's right TMJ dislocates when he is instructed to push his right jaw out is not inconsistent with Dr. Alvarez's assessment that dislocation occurs only at plaintiff's will – when plaintiff intentionally pushes his jaw

out.   Notably, even though plaintiff's summary judgment response was filed on December 30, 2015, well after the October 19, 2015 radiology report, plaintiff has not provided any additional medial evidence genuinely disputing the propriety of Dr. Alvarez's treatment, or establishing a necessary or more efficacious alternative.[7] Based on the evidence in the summary judgment record, a jury could not reasonably conclude that, based on the information known to Dr. Alvarez at the pertinent time, he deliberately ignored a serious medical condition that was obvious or known to him, that he deliberately delayed diagnostic testing or treatment known to be necessary, that he knew of a serious risk to plaintiff and affirmatively disregarded it, or that his treatment was based on non-medical factors.   To the contrary, the diagnosis and treatment provided by Dr. Alvarez may only be characterized as thorough and extensive.   Defendant Dr. Alvarez is entitled to summary judgment.

The issue of Corizon's liability is necessarily dependent on there being an underlying constitutional violation in the first instance.   In *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the Supreme Court held that a state actor "cannot be liable under § 1983 on a respondeat superior theory."   Instead, a state actor may be held liable under § 1983 only "when execution

---

[7] The reason plaintiff declined to provide additional medical evidence is clear, given the findings of two subsequent radiology reports plaintiff submitted in connection with his motion to extend the discovery deadline pertaining to himself and defendant Dr. Johnson.  (Doc. 69, Ex. A).

of a government's policy or custom" is responsible for the alleged deprivation of civil rights. *Id*. at 694. *Monell*'s "policy or custom" requirement covers Corizon because, as the Eleventh Circuit has held, the requirement "applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates." *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997). Because Dr. Alvarez was not deliberately indifferent and did not inflict a constitutional injury, Corizon cannot be liable under § 1983 for the nonexistent constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986) ("[N]either *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury [or a court on summary judgment] has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."); *Rooney v. Watson*, 101 F.3d 1378, 1381-82 (11th Cir.1996) ("[O]ur finding that the Rooneys did not suffer any constitutional deprivation makes it unnecessary to consider Volusia County's policy or custom."). Corizon is entitled to summary judgment.

Accordingly, it is respectfully RECOMMENDED:

1.  That defendants Corizon and Alvarez's motion for summary judgment (doc. 54) be GRANTED, and that summary judgment be GRANTED in favor of defendants Corizon and Dr. Alvarez, and against plaintiff.

2.   That this matter be referred to the undersigned for further pretrial proceedings on plaintiff's pending individual capacity Eighth Amendment claim against defendant Dr. Johnson.

At Pensacola, Florida this 22nd day of April, 2016.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.   A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th CIR. R. 3-1; 28 U.S.C. § 636.