UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CHAD D. CORDREY,

     Plaintiff,

v.                             Case No: 5:15cv33/MW/CJK

CORIZON, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This prisoner civil rights case, filed under 42 U.S.C. § 1983, is before the court upon defendant Dr. Johnson's motion for summary judgment and evidentiary materials.  (Doc. 85).  Plaintiff has responded in opposition with evidentiary materials.  (Doc. 92).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).  After careful consideration, the undersigned concludes that defendant Johnson's motion should be granted.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Florida penal system currently confined at the Reception and Medical Center (RMC).  (Doc. 64).  Plaintiff was confined at Apalachee Correctional Institution (Apalachee CI) at the time of the events giving

rise to this lawsuit.  (Doc. 1).  Plaintiff's complaint names four defendants: Corizon, a private company contracting with the Florida Department of Corrections to provide medical services to inmates at Apalachee CI; Dr. M. Johnson, a dentist at Apalachee CI; Dr. Jorge Alvarez, the Chief Health Officer at Apalachee CI; and "John Doe", subsequently identified as Dr. Jeffrey Render, an oral surgeon at RMC.  Plaintiff claims the defendants delayed and denied proper medical treatment for his injured jaw, in violation of the Eighth Amendment of the United States Constitution.  As relief, plaintiff seeks a declaration that the defendants violated his constitutional rights, injunctive relief, $250,000.00 in compensatory damages against each defendant, and $500,000.00 in punitive damages against each defendant.  (Doc. 1).

Plaintiff voluntarily dismissed his claim against Dr. Render on August 17, 2015.  (*See* Docs. 32, 36, 46).  Defendants Corizon and Alvarez's motion for summary judgment was granted on June 20, 2016, and judgment was entered in their favor. (Docs. 88, 89).  Defendant Johnson's motion for summary judgment was filed on June 7, 2016.  (Doc. 85).

## FACTS

The following facts are drawn from the evidence in the summary judgment record (docs. 85, 92), and from those allegations of plaintiff's verified complaint

(doc. 1) that may be considered on summary judgment.[1]  Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *See Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005).

In September of 2012, while housed at Columbia Correctional Institution, plaintiff was the victim of an inmate assault. (Doc. 1 ¶ 1).  Plaintiff was punched and kicked in the jaw during the attack. (Doc. 1 ¶¶ 2, 3).  Plaintiff was seen by medical at Columbia CI, placed in confinement and, after sixty days, transferred to Apalachee CI. (Doc. 1, ¶¶ 4, 9).  Upon arriving at Apalachee CI, plaintiff signed up for sick call several times, complaining of constant pain in his jaw, difficulty eating, and his jaw popping loudly when he opened his mouth. (Doc. 1 ¶¶ 10-13, 31, 32).  A complete history of the medical care plaintiff received from the medical defendants at Apalachee CI (Dr. Alvarez and Corizon) for his jaw complaints is set forth in the Report and Recommendation dated April 22, 2016. (Doc. 75).

---

1 "A *pro se* plaintiff's complaint, . . . if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence.  Nevertheless, '[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge.'" *Howard v. Memnon*, 572 F. App'x 692, 694 (11th Cir. 2014) (*citing Murrell v. Bennett*, 615 F.2d 306, 310 n.5 (5th Cir. 1980), *and quoting* Fed. R. Civ. P. 56(c)(4)) (footnote omitted).  Conclusory statements are inadmissible because they are not based on personal knowledge. *Lloyd v. Card*, 283 F. App'x 696, 701 (11th Cir. 2008) (*citing Marshall v. City of Cape Coral, Fla.*, 797 F.2d 1555, 1559 (11th Cir. 1986) ("inferences based upon speculation are not reasonable")).

Plaintiff was seen by defendant Dr. Johnson, the senior dentist at Apalachee CI, on five occasions: January 22, 2014; February 12, 2014; May 8, 2014; May 29, 2014; and May 19, 2015.  (Doc. 85, Johnson Decl. ¶ 12 and Ex. A at DR 011-015).  Prior to Dr. Johnson's first visit with plaintiff, plaintiff was seen by a prior dentist at Apalachee CI on December 12, 2013, who requested facial x-rays.  (Doc. 85, Johnson Decl., Ex. A at DR 015).  Facial x-rays were taken on December 15, 2013.  (*See* Ex. A at MR-000302 (noting x-ray of facial bones on December 15, 2013)).

On January 22, 2014, Dr. Johnson reviewed plaintiff's dental record, delivered to him a maxillary occlusion night guard, and provided him with oral health information.  (Doc. 85, Johnson Decl. ¶ 13 and Ex. A at DR 015).  On February 12, 2014, plaintiff presented to sick call with complaints of pain and clicking in his right tempomandibular joint (TMJ) area.  (Doc. 85, Johnson Decl. ¶ 14 and Ex. A at DR 015).  Dr. Johnson examined plaintiff, noting that upon opening, plaintiff's right-side TMJ revealed a click and a slight protrusion in the area of the joint.  (*Id*.).  Dr. Johnson also noted "slight pain" in the area when he "palpated area with significant force".[2]  (*Id*.).  Dr. Johnson reviewed plaintiff's prior x-rays which did not reveal any abnormalities.  (*Id*.).  Dr. Johnson explained his findings to plaintiff and informed

---

2  Dr. Johnson used an accepted abbreviation for "with", namely, a "c" with a bar over it.  Plaintiff does not dispute this interpretation of the abbreviation.

him that he could not resolve these problems and would submit his findings to an oral surgeon, Dr. Gerbecz.  (*Id*.).

On March 10, 2014, plaintiff presented to the dental clinic for a routine dental examination and cleaning which was performed by a dental hygienist.  (Doc. 85, Johnson Decl. ¶ 15 and Ex. A at DR 014).  On April 9, 2014, an x-ray of plaintiff's TMJ was performed.  (Doc. 85, Johnson Decl. ¶ 22 and Ex. A at DR 010 and Ex. B at 302-303).  The radiology report noted the prior x-ray of plaintiff's facial bones on December 15, 2013, and a prior x-ray of plaintiff's skull on July 19, 2013.  (*Id*.).  Interpreting the April 9, 2014 x-ray, the radiologist found:  "No obvious fractures or dislocation is noted.  Symmetric translation of the mandibular condyle is noted on each side.  Intact body and ramus of the mandible."  (*Id*.).  The x-ray impression revealed "Grossly unremarkable temporomandibular joints.  No dislocation is noted." (*Id*.).  The radiologist recommended follow up as clinically indicated.  (*Id.*).

On April 21, 2014, Dr. Alvarez ordered a dental consultation for evaluation of plaintiff's subjective complaints relating to his jaw.  (Doc. 85, Johnson Decl., Ex. B at MR-00248).  Dr. Johnson saw plaintiff on May 8, 2014, pursuant to that referral. (Doc. 85, Johnson Decl. ¶ 16, Ex. A at DR 014 and Ex. B at MR-000283 (clearer image at Doc. 68, p. 283)).  Dr. Johnson noted plaintiff's stated history of having been in an altercation two years prior where he was struck by another inmate in the

right TMJ area.  (Doc. 85, Johnson Decl., Ex. B at MR-000283 (clearer image at Doc. 68, p. 283)).  Upon physical examination, Dr. Johnson found "Clicking upon opening (Rt side)".  (*Id*.).  Dr. Johnson noted that a night guard was made and delivered on January 22, 2014.  (*Id*.).  Dr. Johnson found that the panorex (x-ray) "appears normal."  (*Id*.).  Dr. Johnson provided a provisional diagnosis of "Right side TMJ pain upon opening", and recommended a specialty evaluation by an oral surgeon. (*Id*.).  On May 19, 2014, the dental assistant mailed the referral to oral surgeon Dr. Gerbecz, with plaintiff's x-rays.  (Doc. 85, Johnson Decl. ¶ 17, Ex. A at DR 014).  Dr. Johnson filled a cavity for plaintiff on May 29, 2014.  (*Id*.).

On August 4, 2014, plaintiff had a dental consultation at RMC with oral surgeon Dr. Render.  (Doc. 85, Johnson Decl. ¶ 19 and Ex. A at DR 014 and Ex. B at MR-000282 (clearer image at Doc. 68, p. 282)).  Dr. Render reported that plaintiff complained of a constant click with pain; that plaintiff claimed no interference with eating or sleeping; that plaintiff claimed no improvement with Motrin or the mouthguard; that plaintiff stated his prior Excedrin Migraine provided some improvement; and that his usual pain level was 2/10, increasing to 3/10 with popping. (*Id*.).  Dr. Render made these findings: "Panorex [x-ray] wnl [within normal limits]. Multiple deep wear facets max & mand anterior and posterior teeth.  Opens on vairable [sic] path with opening click on lateral deviation.  When coaxed into straight

opening and closing no joint noise noted.  No trigger points, no muscle tenderness,

no tenderness to palpa [last letter illegible] overlying joints.  Traumatic arthralgia."

(*Id*.).  Traumatic arthralgia is joint pain from injury.  (Doc. 85, Moses Decl. ¶ 19).  Dr.

Render concluded that no oral and maxillofacial surgical treatment was indicated, and

recommended "continued night guard wear" and to "consider for Excedrin Rx on

routine basis."  (Doc. 85, Johnson Decl. ¶ 19 and Ex. A at DR 014 and Ex. B at MR-

000282 (clearer image at Doc. 68, p. 282)).[3]

An x-ray of plaintiff's facial bones was performed on September 10, 2014.

(Doc. 85, Johnson Decl. ¶ 23 and Ex. A at DR 009).  The radiology report noted the

prior x-ray of plaintiff's facial bones in December of 2013.  (*Id*.).  Interpreting the

September 10, 2014 x-ray, the radiologist found: "No displaced fracture is identified.

No aggressive lytic or blastic lesion.  No radiopaque foreign body.  There is a cross

bite.  Question of a right TMJ dislocation."  (*Id*.).  The x-ray impression revealed:

"No displaced fracture identified.  Question of a right TMJ dislocation.  There is a

---

3 Plaintiff alleges in his complaint that Dr. Render told him surgery was not an option because it cost
too much.  (Doc. 1 ¶ 27).  The court does not accept plaintiff's allegation as fact in ruling on
defendant Johnson's motion for summary judgment, because it is hearsay; it is contradicted by
plaintiff's medical records; it is immaterial to the present motion for summary judgment because
there is no evidence Dr. Johnson based his treatment on, or was even aware of, this alleged statement
by Dr. Render; and plaintiff has voluntarily dismissed his claim against Dr. Render.  *See Scott v.
Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (a court may not accept any
facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them].")

cross bite." (*Id.*).   The radiologist recommended:  "dedicated TMJ x-rays. . . .
Correlate clinically with history."  (*Id.*).

The foregoing was the extent of Dr. Johnson's care before plaintiff filed this
lawsuit.  Plaintiff filed this lawsuit on February 23, 2015, alleging constant pain in
his jaw, pain when talking and eating, and that his jaw "popp[ed] loudly".  (Doc. 1,
¶¶ 12, 13, 31, 32).  Plaintiff claims Dr. Johnson "delayed taking a second x-ray of his
injured jaw and ordering an MRI, CT Scan and delayed referring him to an oral
surgeon."  (Doc. 92 ¶ 4 (citing Complaint); *see also* Doc. 1, ¶¶ 17, 33, 37).

The following describes radiology results and Dr. Johnson's treatment of
plaintiff after this lawsuit was filed.   An x-ray of plaintiff's facial bones was
performed on April 8, 2015.  (Doc. 85, Johnson Decl. ¶ 23 and Ex. A at DR 008).
The report noted the prior x-ray of plaintiff's facial bones on September 10, 2014.
(*Id.*).  Interpreting the April 8, 2015, x-ray, the radiologist found: "Multiple views of
the facial bones demonstrate no evidence of acute bony or soft tissue injury.  The
orbital rims, nasal bones, and paranasal sinus walls are intact.  The paranasal sinuses
are clear.  There is no radiopaque foreign body or localized soft tissue swelling.  The
mandible is intact." (*Id.*).  The x-ray impression revealed: "No obvious evidence of
an acute fracture injury involving the facial bones."  (*Id.*).  The radiologist
recommended follow up as clinically indicated.  (*Id.*).

Dr. Johnson saw plaintiff on May 19, 2015, his last contact with plaintiff having been on May 29, 2014.  Dr. Johnson's visit was pursuant to a referral from Dr. Alvarez for "possible maxillofacial assessment."  (Doc. 85, Johnson Decl. ¶ 20 and Ex. A at DR 013 and Ex. B at MR-000145, MR-000189).  Plaintiff inquired of Johnson what else could be done about the issue in his maxillofacial area.  (*Id.*).  Dr. Johnson  explained to plaintiff that the issue was addressed by the oral surgeon (Dr. Render) on August 4, 2014, and that the oral surgeon stated that no surgical treatment was indicated.  (*Id.*).  Plaintiff was not satisfied, and Dr. Johnson explained to him tat he did not have any other advice other than that which was listed on the oral surgeon's August 4, 2014 consultation form.  (*Id.*).

Plaintiff was transferred to Graceville Correctional Facility on or about October 9, 2015.  (Doc. 48).  On October 16, 2015, medical personnel at Graceville CF submitted an x-ray request for plaintiff to receive x-rays of his right TMJ and mandible, noting:  "Have inmate push ® jaw out and x-ray."  (Doc. 85, Johnson Decl., Ex. B at MR-000296).  On October 19, 2015, separate sets of x-rays were taken: one of "the mandible" (doc. 85, Ex. A at DR 005), and the other of "the right temporomandibular joint" (doc. 85, Ex. A at DR 006).  The x-rays generated separate radiology reports dated October 19, 2015.  (Doc. 85, Ex. A at DR 005-006).

The October 19, 2015, x-ray of plaintiff's mandible captured lateral views. The radiologist found: "Multiple views of the mandible show no evidence of acute bony injury. The temporomandibular joints are intact." (Doc. 85, Ex. A at DR 005). The radiologist's impression was: "No acute fracture of the mandible." (*Id*.). The radiologist recommended follow up as clinically indicated. (*Id*.).

The October 19, 2015, x-ray of plaintiff's right TMJ captured open and closed lateral views. (Doc. 85, Ex. A at DR 006; Doc. 92, Ex. C). The radiologist found: "No acute fractures of the mandible identified. There is normal positioning of the condylar process within the TMJ on closed mouth. The condylar process appears dislocated anteriorly on open-mouth views. Clinical correlation." (*Id.*). The radilogist's impression was: "1. No acute fracture of the mandible. 2. Appearance of anterior dislocation on open-mouth views. Clinical correlation. This may [be] further evaluated with MRI." (*Id*.). The radiologist recommended "follow up as clinically indicated." (*Id*.).

An MRI of plaintiff's TMJ was performed on February 25, 2016. (Doc. 85, Johnson Decl. ¶ 27 and Ex. A at DR 004; Doc. 92, Ex. E). The report noted the prior x-rays of plaintiff's right TMJ and mandible on October 19, 2015. (*Id*.). Interpreting the February 25, 2016 MRI, the radiologist found:

Study is limited as images of the mandible is not in plane with mandibular condoyle. Appearance of the right and left temporomandibular joints is symmetric in both open and closed mouth positions bilaterally.

The excursion of the right mandibular condoyle is grossly unremarkable. It remains under the temporal eminence in open-mouth position, with no evidence of dislocation. The visualized portion of the articular disc demonstrate no evidence of degeneration or dislocation. No bony erosions are evident. No fluid is present within the joint.

(*Id*.). The MRI impression revealed: "No evidence of right TMJ dislocation. No bony destructive lesion is present. No joint effusion or significant arthropathy." (*Id*.). The radiologist made an incidental note of a 1 cm polyp in the right maxillary sinus. (*Id*.). The radiologist recommended follow up as clinically indicated. (*Id*.).

A CT scan of plaintiff's facial bones was performed on March 11, 2016. (Doc. 85, Johnson Decl. ¶ 28 and Ex. A at DR 002; Doc. 92, Ex. F). The report noted the prior MRI of plaintiff's TMJ on February 25, 2016, and the prior x-rays of October 19, 2015. (*Id*.). Interpreting the March 11, 2016 CT, the radiologist found:

Bony margins of the orbits and maxillary sinuses are intact without fracture. Zyogmatic arches are intact without fracture. Maxilla is intact. No fracture. Temporomandibular joints are normal, no fracture, no dislocation. No displacement of the mandible. No fracture.

Nasal bone intact. Maxillary spine intact. Frontal sinuses are clear, no obstruction to the nasofrontal recess. The ethmoidal sinuses are clear no obstruction to the sphenoethmoidal recess. Lamina papyracea are intact. There is a retention cyst in right maxillary antrum.

Left maxillary antrum is clear.  No air-fluid levels are seen within the maxillary sinuses.

Nasal septum is slightly deviated to the left.  No blockage of the ostiomeatal complexes.  No mucosal thickening of the sinuses.

Skull base is intact.   Visualized intracranial structures are unremarkable.

(*Id.*).  The CT impression revealed: "Retention cyst in the right maxillary antrum. Nasal septum is slightly deviated to the left.  Otherwise unremarkable examination." (*Id.*).  The radiologist recommended follow up as clinically indicated.  (*Id.*).

On June 22, 2016, Dr. Fares and Dr. Ladele (physicians at the Reception and Medical Center) submitted a request to the Office of Health Services that plaintiff be approved for FESS (functional endoscopic sinus surgery) to remove the cyst, and a septoplasty.  (Doc. 92, Ex. H).  On June 20, 2016, Dr. Ladele, the Medical Director at the Reception and Medical Center requested a consultation with an audiologist for a hearing test due to  plaintiff's complaints of hearing loss.  (Doc. 92, Ex. G).

Defendant Dr. Johnson states that upon every encounter with plaintiff, he reviewed plaintiff's dental record and relevant x-rays, examined plaintiff, and made medical decisions based solely on his medical judgment, including delivering a night guard to plaintiff and referring him to an oral surgeon.  (Doc. 85, Johnson Decl. ¶¶ 29, 33).  Dr. Johnson explains that plaintiff was regularly treated by his attending

physician, Dr. Alvarez, for his symptoms of right jaw pain and was provided pain medication and diagnostic testing.  Dr. Johnson states that none of the diagnostic studies indicated any TMJ dislocation or fracture of the facial bones.  (*Id*. ¶ 31).  Dr. Johnson states that in his medical opinion, the presence of a cyst in p]laintiff's right sinus cavity is wholly unrelated to the scope of the dental care and treatment he provided, and that the sinus cyst does not fall within the scope of any dentist's care and treatment.  (*Id*. ¶ 32).  Dr. Johnson asserts that his review of plaintiff's medical and dental records reflect that plaintiff's dental needs were not ignored, rather, he was provided dental treatment that was appropriate and within the prevailing standard of care.  (*Id*. ¶ 34).

To support his medical opinion, Dr. Johnson has submitted the declaration of a dental expert, Steven Feit, DMD.  (Doc. 85, Feit Decl.).  Dr. Feit has been a licensed and practicing dentist in the State of Florida for over 20 years and is Board Certified in General Dentistry.  (*Id*. ¶ 2).  Dr. Feit states that his expert opinion has never been disqualified or modified in any court of law or administrative tribunal.  (*Id*. ¶ 3).  Dr. Feit is knowledgeable and familiar with the prevailing standards for dental care in the community at large through his training, education and experience.  (*Id*. ¶ 5).  Dr. Feit has reviewed plaintiff's allegations against Dr. Johnson, plaintiff's dental records and plaintiff's medical records, including relevant oral surgeon consultation and radiology

reports.  (*Id*. ¶ 6).  Dr. Feit's expert opinion, based on his education, training and 20 years of experience in dentistry, is that Dr. Johnson met the dental standard of care in the examination and treatment of plaintiff's complaints of an injured jaw and pain in his jaw.  (*Id*. ¶ 7).  Dr. Feit explains:

> 9.  My review of the dental records indicates that Dr. Johnson performed correct, necessary, and appropriate diagnostic treatment[,] planning and management for Cordrey's complaints, including the provision of a night guard, review of radiographs, and referral to an oral surgeon, and that Dr. Johnson's notes adequately document the care and treatment provided.
>
> 10.  The dental records indicate that Dr. Johnson's care and treatment was well within the standard of reasonable care.
>
> 11.  Indeed, there is nothing in the dental and medical records which reflects inappropriate care rendered to Cordrey.
>
> 12.  It is also my opinion, within a reasonable degree of dental probability, that the dental records do not indicate that Dr. Johnson unreasonably delayed in taking radiographs of his jaw, unreasonably delayed in referring him to an oral surgeon, or otherwise ignored Cordrey's complaints of jaw pain.
>
> 13.  It is additionally my opinion, within a reasonable degree of dental probability, that the outcome for Cordrey would have been the same even if I were to assume that Dr. Johnson unreasonably delayed in taking radiographs of his jaw and/or unreasonably delayed in referring him to an oral surgeon.
>
> 14.  This is especially so since there is no indication in any of the dental records, medical records or radiology reports of any TMJ dislocation, fracture of the jaw bones, or other injury to Cordrey's jaw.

. . . .

16.  The presence of th[e] cyst [in plaintiff's right sinus cavity] is wholly unrelated to the dental care and treatment provided by Dr. Johnson.

17.  Moreover, the discovery and/or treatment of a cyst in the sinus cavity does not fall within the standard of reasonable care to be provided by a dentist.

18.  It is further my opinion, within a reasonable degree of dental probability, that Dr. Johnson's care and treatment did not cause Cordrey any unnecessary pain, cause him any permanent injury, put him at further risk of injury, or worsen any dental or medical condition.

(*Id*. ¶¶ 9-18).  Plaintiff's affidavit in response to Dr. Johnson's motion for summary judgment states that, in plaintiff's personal, non-medical opinion: "[h]ad Dr. Johnson followed the proper procedure, the [r]etention cyst would have been discovered, but his deliberate indifference to Cordrey's medical condition significantly delayed this procedure for two years. . . ."  (Doc. 92, p. 13).

## DISCUSSION

<u>Legal Standards</u>

A.    Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 160 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("[T]he plain language of Rule 56(a)

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").  In applying this standard, the court must view the facts in the light most favorable to the non-moving party (here, the plaintiff) and draw all reasonable inferences in favor of that party.  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *Id.*  An issue is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party.  *Id.*  "[T]he nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'"  *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011).  Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a

genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995).

      B.     Eighth Amendment Standard

     A prisoner claiming he was deprived of medical care in violation of the Eighth Amendment must show "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (*citing Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)); *see also Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (holding that a serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm.").

     Deliberate indifference has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow*, 320 F.3d at 1245 (quotations omitted).  This means that the official must have been actually aware of the risk of harm: "the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Allegations of negligence and medical malpractice do not state a plausible claim for relief under the Eighth Amendment or § 1983. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

Delay in providing "medical treatment known to be necessary" can qualify as deliberate indifference. *H.C. ex rel. Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986); *see also Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[I]f necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out."). That delay, however, must be "tantamount to unnecessary and wanton infliction of pain". *Hill* at 1188 (internal quotation marks and citations omitted). "[The] delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay." *Hill* at 1188-89.

Application of Summary Judgment Standard to Plaintiff's Claim Against Johnson

Plaintiff claims defendant Dr. Johnson deliberately delayed and denied proper dental treatment for his known, serious, painful jaw condition, in violation of the Eighth Amendment. (Doc. 1). Plaintiff summarizes: "The Plaintiff's injured jaw

could have been properly and timely treated if not for the delay and denial of treatment by Defendants Alvarez, Johnson, and Doe [Dr. Render] and the practices, policies, and procedures of Defendant Corizon."  (Doc. 1 ¶ 36).

The condition of plaintiff's jaw is well-documented and is not in dispute.  The dental records, medical records, diagnostic tests and radiology reports relied on by both parties establish that even taking plaintiff's allegation as true that his jaw occasionally causes pain and clicks or pops, there is no TMJ dislocation, fracture of the jaw bones, or other injury to plaintiff's jaw.  Although a sinus cyst was discovered after this litigation commenced, that condition does not relate to the condition that is the subject of this lawsuit – plaintiff's jaw.  Dr. Johnson submitted expert medical testimony that the sinus cyst is wholly unrelated to the jaw-pain-and-clicking complaints forming the basis of this suit and Johnson's care.  Plaintiff has not produced evidence that could lead a rational trier of fact to find that the two issues are related.[4]  Taking the evidence in the record in the light most favorable to plaintiff, a

---

4  Plaintiff's speculation does not provide sufficient evidence to raise a genuine dispute.  *Josendis v. Wall To Wall Residence Repairs Inc.*, 662 F.3d 1292, 1318 (11th Cir. 2011) (declining to consider plaintiff's statements in opposition to summary judgment because they were not grounded in admissible evidence and plaintiff did not explain how he came to his "belief"; explaining: "[u]nreliable conjecture . . ., presented as a 'belief' without any basis in ascertainable fact, was not the type of admissible evidence required to survive a motion for summary judgment."; stating further:  "[a]t the summary judgment stage, such 'evidence,' consisting of one speculative inference heaped upon another, was entirely insufficient." (*citing Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005))).

reasonable jury could not find that plaintiff  has, or had, a serious dental condition affecting his jaw.   Plaintiff cannot satisfy the objective, serious-medical-need component of an Eighth Amendment claim.

There is also no genuine factual dispute concerning the care Dr. Johnson provided and the factors influencing that care.  Plaintiff's medical and dental records establish that Dr. Johnson examined plaintiff for his jaw-related complaints on four occasions.  Dr. Johnson reviewed recent radiograph results,  provided plaintiff with a night guard and referred him for consultation with an oral surgeon.  The oral surgeon indicated that surgical treatment was not indicated, and did not order further diagnostic testing.  Dr. Johnson based his decisions regarding plaintiff's care on his medical judgment informed by clinical results.  Plaintiff has not produced evidence genuinely disputing Johnson's evidence that his decision not to order additional dental treatment or diagnositc testing (including an MRI) was a medical judgment.

The later discovery of the unrelated sinus condition does not create a triable issue on whether Dr. Johnson was deliberately indifferent to plaintiff's complaints about his jaw.  Plaintiff has not provided any medial evidence genuinely disputing the propriety of Dr. Johnson's treatment, or establishing a necessary or more efficacious alternative.  Taking the evidence in the record in the light most favorable to plaintiff, a jury could not reasonably conclude that, based on the information known to Dr.

Johnson at the pertinent time, he deliberately ignored a serious dental condition that was obvious or known to him, that he deliberately delayed diagnostic testing or treatment known to be necessary, that he knew of a serious risk to plaintiff and affirmatively disregarded it, or that his treatment was based on non-medical factors. Dr. Johnson's decision not to order an MRI at the time he treated plaintiff's jaw was a medical judgment that does not amount to deliberate indifference. *See Estelle*, 97 S. Ct. at 292-93.

## CONCLUSION

The entire thrust of plaintiff's opposition to summary judgment is his attempt to establish a causal connection between Dr. Johnson's treatment of his jaw and the later-discovered sinus cyst.  (*See* Doc. 92, p. 4 ("[H]ad [Johnson] requested a MRI it would have revealed a cyst in the right maxillary sinus."")).  Yet plaintiff ignores the fact that he never complained about, or was referred to Dr. Johnson for, symptoms relating to his sinus.  Plaintiff also ignores the fact that the same MRI that noted the sinus cyst also found:  "No evidence of right TMJ dislocation.  No bony destructive lesion is present.  No joint effusion or significant arthropathy."  (doc. 85, Johnson Decl at Ex. A, pp. DR 003-004), thereby confirming that an MRI would not have made any difference in the treatment or outcome of the jaw issue for which Dr. Johnson provided care.  In other words, even considering the October 19, 2015 MRI

results, plaintiff still has not created a genuine issue for trial and still cannot satisfy the objective, subjective, or causation element of an Eighth Amendment claim concerning treatment for his alleged jaw injury.  There is no genuine dispute of any material fact, and Dr. Johnson is entitled to judgment as a matter of law.

Accordingly, it is respectfully RECOMMENDED:

1.  That defendant Dr. Johnson's motion for summary judgment (doc. 85) be GRANTED.

2.  That the clerk be directed to enter judgment in favor of defendant Dr. Johnson and against plaintiff.

3.  That the clerk also be directed to enter judgment dismissing plaintiff's claim against defendant Dr. Render pursuant to plaintiff's voluntary dismissal over one year ago (*see* Docs. 32, 36, 46), and that the clerk close the file.

At Pensacola, Florida this 22nd day of November, 2016.


**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.